IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RICARDO KAHILO, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | No. 5:26-CV-449-DAE |
| | § | |
| ROSE THOMPSON, *et al.*, | § | |
| | § | |
| *Respondents*. | § | |
| | § | |

ORDER

Before the Court is Petitioner Ricardo Kahilo's ("Petitioner")

Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Dkt. # 10),

and Respondents' Response.  (Dkt. # 15).

The Court finds this matter suitable for disposition without a hearing.

After careful consideration of the parties' briefings and the relevant law, the Court

**GRANTS** the Amended Petition for Writ of Habeas Corpus (Dkt. # 10) for the

reasons that follow.

FACTUAL BACKGROUND

Petitioner Kahilo is a citizen of Angola who is currently detained at

the Karnes Immigration Processing Center in Karnes City, Texas.  (Dkt. # 10 at ¶¶

6, 7.)  Petitioner arrived in the United States on May 7, 2023 seeking asylum, and

1

was released on his own recognizance on May 12, 2023.[1]  (Id. at ¶¶ 18, 29.)  Since

his entry, Petitioner has complied with all conditions of his Order of Supervision,

including attending check-ins, court hearings, and government appointments; has

worked with a valid work authorization and paid taxes each year; and has no

criminal history.  (Id. at ¶ 19.)  Petitioner timely filed an I-589 asylum application

in September of 2023.  (Id.)

Petitioner was re-detained by Immigration and Customs Enforcement

("ICE") officers on May 29, 2025, while attending a Master Calendar Hearing and

taken to the Karnes County Immigration Processing Center where he has remained

since.  (Id. at ¶ 22.)  Petitioner is being held without the opportunity for a bond

hearing; although Petitioner requested a custody redetermination, the immigration

court refused jurisdiction.  (Id. at ¶ 21.)

PROCEDURAL HISTORY

On January 21, 2026, Petitioner filed his Original Habeas Petition.

(Dkt. # 1.)  The case was reassigned to the undersigned on February 2, 2026.  (Dkt.

# 7.)  On February 9, 2026, Petitioner filed an amended habeas petition asserting

that his detention without bond violates his due process rights.  (Dkt. # 10 at ¶¶ 54–

---

[1]  The Court notes that Petitioner has not included documentation with his petition.
See Dkt. # 10.  However, given that Respondents do not dispute the facts of this
case, the Court accepts Petitioner's allegations regarding the procedural history of
his detention as true.  See Dkt. # 15.

56.)    On February 10, 2026, this Court issued an order vacating an earlier show cause order and ordered Respondents Miguel Vergara, Director of San Antonio Field Office, United States Immigration and Customs Enforcement and Removal Operations; Kristi Noem, Secretary of the United States Department of Homeland Security; the Department of Homeland Security ("DHS"); Todd M. Lyons, Director of United States Immigration and Customs Enforcement; Pamela Jo Bondi, Attorney General, United States Department of Justice; the Executive Office for Immigration Review; and Rose Thompson, Warden of the Karnes County Immigration Processing Center (collectively, "Respondents") to show cause within three days as to why the petition should not be granted.  (Dkt. # 12.)

The Federal Respondents timely filed a response to the Amended Petition for Writ of Habeas Corpus on February 13, 2026, and Petitioner replied the same day.  (Dkt. ## 15, 16.)

## LEGAL STANDARD

A district court may grant a writ of habeas corpus if a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.  The habeas petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence."  Villanueva v. Tate, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D.

3

Tex. Sept. 26, 2025) (internal citation and quotations omitted).  "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

DISCUSSION

In his Petition, Petitioner claims that Respondents lack statutory authority to detain him without a bond hearing and are violating his constitutional right to due process by doing so.  (See Dkt. # 10.)  He brings a second claim for statutory violation of the Immigration and Nationality Act ("INA"), seeking to preserve his arguments for appeal.  (Dkt. # 10 at 18.)

As an initial matter, the Court finds it necessary to address Respondents' arguments regarding exhaustion.  To the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile."  See Lorenzo C. P., v. Noem, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025); see also Shi v. Lyons, No. 1:25-CV-274, -- F. Supp. 3d --, 2025 WL

4

3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025) (holding that administrative exhaustion would be futile in light of <u>Matter of Yajure Hurtado</u>).[2]

Proceeding to the merits of the Petition, in light of the Fifth Circuit's recent decision in <u>Buenrostro-Mendez v. Bondi</u>, this Court finds Petitioner's statutory claims foreclosed.  --- F.4th ---, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).  In that case, the Panel considered a district court decision finding § 1225(b)(2) inapplicable to noncitizens who have resided in the country for years. <u>Id.</u>  The Panel disagreed with this interpretation of the INA—the same argument Petitioner now advances.  <u>Id.</u> at *9–10; Dkt. # 10 at 18.  Finding that <u>Buenrostro</u> renders Petitioner's statutory arguments unsuccessful, the Court turns to Petitioner's remaining due process claim.[3]

---

[2] As an additional matter, this Court finds it may assert its jurisdiction over this case for the same reasons stated in its previous orders.  <u>Campuzano v. Noem</u>, No. 1:25-cv-1715-DAE, 2026 WL 90062 (W.D. Tex. Jan 6, 2026); <u>Fabian-Granados v. Bondi</u>, No. 1:25-cv-2068-DAE, 2026 WL 90061 (W.D. Tex. Jan. 8, 2026); <u>Silva v. Bondi</u>, No. 1:25-cv-2155-DAE, 2026 WL 90060 (W.D. Tex. Jan. 12, 2026).

[3] To the extent Respondents argue that <u>Buenrostro</u> prevents this Court's review of the Petitioner's due process claims, the Court finds such an argument unpersuasive. Indeed, the Fifth Circuit's decision was limited only to that petitioner's statutory interpretation arguments and did not reach any issue of whether a petitioner's detention violated the Fifth Amendment.  <u>See Buenrostro-Mendez</u>, 2026 WL 323330.  The Government acknowledged as much in their oral arguments by stating: "We have one issue before the Court now: the statutory question. . . . There's not, in other words, a due process claim here."  Oral Argument, <u>Buenrostro-Mendez</u>, 2026 WL 323330, at 44:56–45:11 (5th Cir. Feb. 3, 2026), <u>available at</u> https://www.ca5.uscourts.gov/OralArgRecordings/25/25-20496_2-3-2026.mp3.

The Fifth Amendment's Due Process Clause prevents the Government from "depriv[ing]" any "person . . . of liberty . . . without due process of law." U.S. CONST. amend. V.  This right is not limited to United States citizens; noncitizens similarly are entitled to due process in accordance with the Fifth Amendment.  Trump v. J. G. G., 604 U.S. 670, 673 (2025);  Demore v. Kim, 538 U.S. 510, 523 (2003). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  Zadvydas v. David, 533 U.S. 678, 690 (2001) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

Respondents argue Petitioner is entitled only to the due process provided by the INA, citing Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 140 (2020).  (Dkt. # 15 at 9.)  However, other courts in this Circuit have distinguished Thuraissigiam from cases like Petitioner's for two reasons: "First, because [Petitioner] challenges his detention, not his deportability.  And second, because [Petitioner] was detained after years of presence in the United States, rather than on the threshold of initial entry."  Hernandez-Fernandez v. Lyons, No. 5:25-cv-773-JKP, 2025 WL 2976923, at *8 (W.D. Tex. Oct. 21, 2025); see also Zafra v. Noem, No. EP-25-cv-521-DB, 2025 WL 3239526, at *3 (W.D. Tex. Nov. 20, 2025) ("[T]his Court agrees with the line of other courts that have found Thuraissigiam is not preclusive on the facts of this case because (1) Petitioner is

6

not challenging his removal, but rather his detention during removal, and (2) he was not detained at the border on the threshold of initial entry, but rather after living in the United States for over twenty-five years."); Lopez-Arevelo v. Ripa, 801 F.Supp.3d 668, 681–85 (W.D. Tex. 2025) (undertaking a detailed analysis of Thuraissigiam and reaching the same conclusion described above).  Thus, this Court agrees with this line of reasoning and finds that Thuraissigiam does not bar this Petitioner from bringing a due process claim where he only challenges his detention and not his deportability, and where he was detained after years of presence in the United States.[4]

Having found Petitioner is entitled to due process, the Court proceeds to determining whether Petitioner's arguments are meritorious.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).  "To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part

---

[4] The Court notes that Petitioner was, indeed, initially detained upon entry to the United States and released on his own recognizance.  (Dkt. # 10 at ¶¶ 18, 29.) However, this case remains distinguishable from Thuraissigiam where the instant Petitioner was only detained for five days and then released for two years before his re-detention, and the petitioner in Thuraissigiam was immediately detained and never released.  See 591 U.S. at 114.  "While Thuraissigiam saw little of this country beyond his jail cell at the border, [Petitioner] has built a life here."  See Lopez-Arevelo, 801 F.Supp.3d at 685.

test set forth in Mathews[.]"  Martinez v. Noem, No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025).  Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first factor weighs in Petitioner's favor.  "'The interest in being free from physical detention' is 'the most elemental of liberty interests.'"  Martinez v. Noem, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025) (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)).  Petitioner lived and worked free from custody in the United States for two years prior to his recent detention.  (Dkt. # 10 at ¶ 29.)  Further, since being taken into detention while attending a master calendar hearing, he has been detained for over eight months.  (Id. at ¶19, 20.) This interest "deserves great weight and gravity" and thus weighs heavily in Petitioner's favor.  See Vieira v. De Anda-Ybarra, 806 F.Supp.3d 690, 701 (W.D. Tex. Oct. 16, 2025).

On the second factor, courts consider "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and

the degree to which alternative procedures could ameliorate these risks." Martinez v. Noem, 2025 WL 2598379, at *3 (quoting Gunaydin v. Trump, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025)). Here, there is a high risk of erroneous deprivation of Petitioner's liberty since he is being detained without the opportunity for an individualized bond hearing, depriving him of the ability to contest the reasonableness of his detention. See Vieira, 806 F.Supp.3d at 701 ("The risk lies in the automatic continued deprivation of liberty . . ."). There would be significant value added by additional safeguards, such as a bond hearing or pre-detention notice, that would reduce the likelihood of an erroneous loss of liberty. This is particularly true for Petitioner, who has received no individualized explanation as to the decision to re-detain him after years of living free of detention. (See Dkt. # 10 at ¶ 29.) "[A]bsent some change in [Petitioner's] personal circumstances, the decision to incarcerate [him] after [] years at liberty gives rise to an elevated concern that [he] has been detained without a valid reason." Santiago v. Noem, EP-25-cv-361-KC, 2025 WL 2792588, at *12 (W.D. Tex. Oct. 2, 2025). Thus, this factor also weighs in Petitioner's favor.

Third is the Government's interest. See Mathews, 424 U.S. at 335. The Government has a legitimate interest "in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community." Lopez-Arevelo, 801 F.Supp.3d at 686–87. But where Respondents have already made the

decision to release Petitioner on his own recognizance three years ago, that decision "in and of itself[] 'reflects a determination . . . that the noncitizen is not a danger to the community or a flight risk.'" Id. (citing Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd 905 F.3d 1137 (9th Cir. 2018)). Respondents do not dispute that Petitioner has complied with the conditions of his release, including attending check-ins, appointments, and maintaining a clean criminal record. (See Dkt. # 10 at ¶ 19.) That he was arrested while attending a scheduled hearing further supports Petitioner's history of compliance. (See id.) Thus, as applied to this Petitioner, the Government's interest in community safety and attendance at removal hearings is neutral.

In weighing all three factors, the Court finds the scale tips in Petitioner's favor; thus, Petitioner's detention without an opportunity to challenge his detention through an individualized assessment violates his right to procedural due process under the Fifth Amendment of the United States Constitution.[5]

On the issue of appropriate relief, the Court is persuaded that it need not depart from the "typical remedy" in habeas cases challenging the lawfulness of detention, which "is, of course, release." See Munaf v. Geren, 553 U.S. 674, 693 (2008). Further, ordering a bond hearing under these circumstances would require the Immigration Judge to do that which he believes he lacks authority to do

---

[5] In so finding, the Court declines to reach any of Petitioner's remaining claims.

following Matter of Yajure Hurtado, 29 I&N Dec. 216, 220 (BIA 2025).  The Court

instead finds that the more appropriate remedy here is release.[6]  See Azua-Zuniga

v. Bondi et al., No. 1:26-cv-287-RP (W.D. Tex. Feb. 20, 2026) (finding support for

the same remedy under similar circumstances).

As a final matter, "[a]lthough Petitioner invokes jurisdiction under 28

U.S.C. §§ 1331 and 2241 and seeks attorney fees, the Court treats the instant action

solely as a habeas action under § 2241."  Davila Mercado, 2025 WL 3654268, at

*7.  Here, as in Davila Mercado, Petitioner has not specifically brought any non-

habeas claim and has paid only the minimal habeas filing fee.  Accordingly, the

Court denies any request for attorney's fees in this case.  Id.; Aldana Perez v.

Noem, et. al., No. SA-25-CV-01534-XR, 2025 WL 3654262, at *7 (W.D. Tex. Dec.

5, 2025); Barco v. Witte, 65 F.4th 782, 785 (5th Cir. 2023) (holding that the Equal

Access to Justice Act does not authorize attorney's fees for successful 28 U.S.C. §

2241 motions).

---

[6]  The Administration, in widely publicized statements, has said its enforcement efforts target violent criminals and the "worst of the worst."  Clearly, the Petitioner in this case, who has abided by all requirements of his release, not been charged with any crimes, and was in fact detained while in the process of complying with his check-in requirements, is not the violent criminal or a danger to the community. (See Dkt. # 10 at ¶ 19–20.)

CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Amended Petition

for Habeas Corpus.  (Dkt. # 10.)  It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Ricardo Kahilo from custody, under conditions of release no more restrictive than those in place prior to the detention at issue in this case, to a public place by **no later than 5:00 p.m. on February 27, 2026**.

2. Respondents must **NOTIFY** Petitioner's counsel by email (mhoffman@casamarianella.org) of the exact location and exact time of Petitioner's release as soon as practicable and **no less than two hours before his release**.

3. Respondents are enjoined from further detaining Petitioner without first conducting a bond hearing, scheduled with notice to Petitioner's attorneys and set at a date agreed upon by both parties.  At such a hearing, Respondents bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's detention.

4. The parties shall **FILE** individual status reports no later than **6:00 p.m.**

   **March 2, 2026**, detailing their compliance with this Order.

   **IT IS SO ORDERED**.

   **DATED**: Austin, Texas, February 26, 2026.

   _____
   David Alan Ezra
   Senior United States District Judge

12